# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 44

APRIL TERM, A.D. 2017

April 28, 2017

MATTHEW LEN JONES,

Appellant
(Defendant),

v.

S-15-0222, S-16-0201

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.  Argument by Mr. Westling.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General. Argument by Ms. Martens.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Matthew Jones filed the first of these consolidated appeals to challenge his conviction for second-degree sexual assault of a minor.[1]  Before submitting a brief in that appeal, he moved the district court for a new trial, claiming that his trial counsel was ineffective.  His second appeal contests the denial of that motion.  We affirm.

## ISSUES

[¶2]    Jones raises three issues, two of which we combine, and all of which we simplify and restate as follows:

1.  Did the district court err in concluding that Jones failed to show that his attorney was ineffective either in pretrial proceedings or at trial?

2.  Was the evidence sufficient to show that Jones harbored the intent to achieve sexual arousal, gratification, or abuse when he had the minor victim touch him?

## FACTS

[¶3]    AR and her six-year-old daughter, IR, had recently moved into a new apartment in Rawlins, and AR wanted to show off her new lodgings to relatives during the Memorial Day weekend of 2014.  She decided to host a lasagna dinner on Sunday, May 25, and she invited her sister Stevie and Stevie's daughter, as well as a contingent from Kemmerer that included Jones, his wife,[2] and their son and daughter.  Because AR had to work that day, she could not join the others in a fishing trip to a local lake, where IR caught her first fish.  Jones dirtied his pants while cleaning a rather large trout, and so he changed into a pair of pajama bottoms before going to dinner at AR's new place.

[¶4]    After AR had finished cleaning the kitchen after dinner, Jones' wife started preparing root beer floats for dessert, and AR went to IR's bedroom where IR and Jones and his son had been playing video games to tell them about the dessert.  The boy was still absorbed in a game, but Jones was reclining on the bed with his waist raised off the mattress while IR straddled his lap.  Both had their hands underneath a blanket draped across Jones' midsection, and they appeared shocked and surprised at her sudden

---

[1] The statute under which he was charged, Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2015), proscribes an actor who is at least sixteen years old from engaging in sexual contact with a victim who is less than thirteen.  For the purposes of this case, sexual contact includes having the victim touch the external genitalia of the actor, or the clothing covering the immediate area of the same, with the intent of sexual arousal, gratification, or abuse.  Wyo. Stat. Ann. § 6-2-301(a)(ii) and (vi) (LexisNexis 2015).

[2] Jones and his wife are referred to as the uncle and aunt of AR and her sister in the record.  However, there was no blood relationship.  Mrs. Jones was the sister of a man who was not the biological parent of the two girls, but who raised them as if he were their father for nearly all of AR's life.

1

appearance. AR asked Jones, "What is this?" He removed his hands from the blanket, and with what she perceived to be a guilty look, replied that they "were just playing a game."

[¶5]    AR took the girl to the kitchen, and on the pretext of smoking a cigarette, drew her sister into another bedroom to tell her what she had just seen. Her sister recommended that she ask IR what she and Jones had been doing, and so after her guests had departed she did so. The child began to cry and told her mother that Jones had pulled his "pee pee" out through a hole in his pajama pants and had her touch it. AR then initiated a three-way telephone conversation with her sister and their mother, who was at that time working out of town. Their mother asked AR to try to handle the matter within the family, and suggested that she first speak to Jones and his wife about IR's report.

[¶6]    The next day, accompanied by her sister, AR spoke to them for approximately forty-five minutes before they left for Kemmerer. Jones claimed his penis might have fallen out while he was wrestling and playing with IR, and she accidentally touched it, but he slapped her hand away and scolded her for it. Two days later, on Wednesday, May 28, 2014, AR contacted law enforcement and met that evening with Carbon County Deputy Sheriff Rakoczy at his office.

[¶7]    Consistent with his agency's policy, the deputy arranged for IR to be interviewed by a forensic examiner with the Children's Advocacy Project in Casper. Kristi DePoorter conducted and video-recorded that interview on June 2, 2014. Jones was charged with second-degree sexual abuse of IR nearly a month later.

[¶8]    On December 11, 2014, Jones' attorney filed a motion for a hearing to test IR's competency to testify. Meanwhile, counsel reviewed the video of DePoorter's interview and eventually retained Shontay Roe to evaluate the quality of that interview.[3] His impression after viewing the video was that IR would likely be found competent, but that he might have a basis to argue that her memory had been tainted by suggestive interviewing techniques.[4]

[¶9]    Ms. Roe, however, did not agree. She concluded that the interview was as well-conducted as it could have been, and that while DePoorter used some leading questions to extract additional information from IR, they were appropriate because they were not aimed at obtaining any specific information. DePoorter did not appear to Roe to be going for any particular answer or even going in any particular direction. Nevertheless, Roe assisted defense counsel by directing him to areas where IR's memory of the events

---

[3] Ms. Roe was a counselor with training and experience in conducting forensic interviews with children who were victims of sexual assault.

[4] Mounting a similar argument in relation to AR's questioning of IR was impeded by a dearth of information as to the specifics of any such exchanges and AR's failure to return counsel's call to seek an interview with her.

might be attacked at trial by highlighting discrepancies in her narrative, and by contrasting those discrepancies and the accounts of her mother against those of Jones' wife and children.

[¶10] The competency hearing took place in district court chambers on January 9, 2015. The judge noted that he had reviewed the video of IR's forensic interview, and he informed the attorneys that he would be doing the lion's share of the examination of the child, but that counsel for the parties could examine IR further after he finished. The court found that the video and its own inquiry showed that IR had the mental capacity to differentiate between truth and lies and understood her duty to tell the truth. IR likewise exhibited an independent memory, both in general and relating to the events that brought her into court, and that she was able to tell what she remembered in response to questions.[5] The court was particularly impressed by the child's resistance to conforming her memory to any suggestions by the forensic interviewer. Consequently, it deemed IR competent to testify.

[¶11] A month later, following a two-day trial, Jones was convicted of second-degree sexual abuse of IR. The district court sentenced him to imprisonment for six to ten years, he appealed, and as noted above, before briefing he moved for a new trial on the ground that his trial attorney was ineffective, as permitted by Rule 21 of the Wyoming Rules of Appellate Procedure.

[¶12] The district court held an evidentiary hearing on that motion on April 12, 2016, and denied it on June 22.[6] Jones took a timely appeal from that decision.

## DISCUSSION

### Ineffective Assistance

[¶13] Jones argues that his attorney was ineffective in preparing for and presenting a defense at both the competency hearing and trial. With respect to the former, he criticizes counsel for failing to challenge the forensic interview as tainting IR's memory, allegedly failing to seek out an expert witness who could assist with that challenge,

---

[5] At the post-trial hearing on counsel's effectiveness, Jones suggested that his attorney should have explored what he characterized as IR's speech-related developmental disability. The record, however, reveals only that the then second-grader was receiving unspecified assistance with reading, math, and speech. Counsel did not further investigate the matter because any difficulties experienced by the child were not sufficient to prevent her from achieving an age-appropriate grade level. We also note that, whatever IR's difficulties may be, they did not appear to hamper her interactions with the forensic interviewer, the district court at the competency hearing, and the attorneys at trial. Their primary manifestation appears to have been her use of pronouns such as "him" and "them" as the subjects of sentences.

[6] We will set out the facts pertinent to Jones' allegations and the district court's decision as they become necessary in our discussion below of Jones' appellate ineffective assistance argument.

3

failing to investigate whether IR suffered from any developmental disabilities, and failing to investigate whether AR had tainted the child's memory. As for counsel's trial performance, Jones argues that he did not adequately cross-examine the girl or otherwise attempt to challenge the credibility of her accusation against Jones.[7]

[¶14] To establish that counsel was ineffective, Jones must show that under the circumstances at the time of a challenged act or omission, his attorney's performance fell below that of a reasonably competent lawyer, and that it is reasonably probable that absent the deficient performance the outcome of the proceeding would have been more favorable to him. *Griggs v. State*, 2016 WY 16, ¶ 36, 367 P.3d 1108, 1124 (Wyo. 2016). This Court does not evaluate counsel in hindsight, but from the perspective available at the time. *Mraz v. State*, 2016 WY 85, ¶ 44, 378 P.3d 280, 291 (Wyo. 2016).

[¶15] When an ineffective assistance claim is first reviewed by a district court under W.R.A.P. 21, we defer to its factual findings unless they are clearly erroneous. However, we review the mixed questions of law and fact as to whether counsel's performance was deficient and whether the defendant was prejudiced by that deficiency de novo. *Griggs*, ¶ 37, 367 P.3d at 1124.

[¶16] When an ineffectiveness claim rests on the failure to call an expert witness, the defendant must show that one was available to testify in a manner consistent with his theory of the case. Moreover, once he shows that such an expert was available, the defendant must also show that counsel's decision regarding the use of an expert reflected incompetency rather than a reasonable tactical choice. *Id.* ¶ 38, 367 P.3d at 1124-25. For instance, using an expert to help prepare a case may be more valuable than having the expert testify. *Id.* ¶ 39, 367 P.3d at 1125.

[¶17] Similarly, when the brevity of cross-examination is claimed to be a sign of ineffectiveness, we need to be sensitive to the strategic risks created by even "that one last question" on cross-examination. The witness may be given an opening or opportunity, either then or on redirect examination, to reconcile apparent inconsistencies, to provide additional testimony unfavorable to the examiner's client, or to enhance the credibility of unfavorable testimony already given. *Mraz*, ¶ 48, 378 P.3d at 292.

[¶18] The evidence presented at the Rule 21 hearing showed that counsel's interest in working with children led him to become a high school teacher before he attended law school. He took several courses in child psychology and development as a part of his

---

[7] A substantial portion of Jones' brief takes on the district court's conclusion that he failed at the W.R.A.P. 21 hearing to carry his burden of proof regarding those arguments. In the main, he relies on the "uncontested" testimony of an expert witness at that hearing. We do not think it necessary to belabor the notion that, if we likewise find insufficient support for those arguments, we need not say anything further regarding his view of the district court's decision.

education as a teacher, and he also took courses on those subjects to improve his legal work as a guardian ad litem.

[¶19] He reviewed the recording of IR's forensic interview and entered the competency hearing with the perspective developed through that experience and education, and like the district court after him, he concluded that the child was probably competent to testify.[8] Although IR had speech difficulties, he did not believe they were an indication of any mental impairment. Consequently, he decided not to contest IR's general capacity to testify.[9] Jones does not challenge the district court's conclusion that IR was competent to testify, and he provides us with no basis to conclude that counsel's evaluation was any less reasonable than the court's.

[¶20] Jones suggests that counsel should have investigated whether IR suffered from some intellectual disability, but in light of the fact that the seven-year-old was attending second grade, which was appropriate for her age, it was unlikely that she had such a disability or that it would render her incompetent to testify. Counsel's and the court's conclusions are reasonable based on the evidence, and they are not speculative like those Jones offers.

[¶21] Jones' argument similarly falls short of establishing that counsel did not challenge the forensic interview as tainting IR's memory because he failed to investigate that issue and obtain an expert witness who could support that claim. The first two experts counsel asked to evaluate the forensic interview and potentially testify at trial could not take the case because their practices were too busy, but one of them recommended Shontay Roe. As already noted, Ms. Roe concluded that Ms. DePoorter conducted the interview in as professional a manner as possible, using leading questions sparsely and in an appropriate way to facilitate communication from the child, but without promoting any particular answers.[10] In short, Roe's assessment did not support the notion that the interview tainted IR's memory and prospective testimony.

---

[8] This Court requires trial judges to independently examine children to resolve the question of competency and accords great deference to their determinations relating to that test. The elements of that test relate to the child's understanding of truth and falsity and her obligation to speak the truth in court, her ability to obtain and independently recall an accurate impression about the subject of her testimony, and her ability to verbally express that recollection in response to simple questions. *Griggs*, ¶¶ 11, 13, 367 P.3d at 1119.

[9] Jones suggests that, because taint relates to the "independent recollection" aspect of the *Griggs* test (see n.8 above), counsel's concession of IR's general competency amounted to an abandonment of the argument that the forensic interviewer tainted IR's testimony. The record shows, however, that counsel expressly advanced the taint issue at the competency hearing, and that the district court recognized as much and addressed that issue in its order after that hearing.

[10] It is worth noting that, although the district court was slightly more critical of a portion of the interview, it concluded that IR refused to be led into altering her story by DePoorter.

[¶22]  However, Ms. Roe's review of the video permitted her to suggest areas where IR's memory of details and chronology might be attacked at trial through discrepancies in her story, and by contrasting her and her mother's accounts of the facts with those of Jones' wife and children.  Counsel cannot be faulted for deciding not to call Roe as a witness at either the competency hearing or trial, and Jones has not advised us of any expert who would provide an assessment of the interview more favorable to him than that of Ms. Roe.

[¶23]  We also reject Jones' suggestion that counsel was ineffective because he lost the video of the forensic interview for a period of time.  The record shows that the State sent the video to counsel on August 15, 2014, but that it was misplaced until sometime between November 25 and December 4, 2014.  We fail to see how that slip-up could be deemed prejudicial when counsel and Roe were able to thoroughly review and evaluate the video before the competency hearing.

[¶24]  The district court determined that counsel appropriately raised the issue of IR's competence by filing the motion that led to the competency hearing.  The court observed that it advised Jones' attorney that it would be questioning the child, and that it in fact did so thoroughly in an effort to elicit sufficient information to evaluate her competency.[11]  Given the use of that procedure, the court found no deficiency in counsel's performance at the hearing, and it also highlighted counsel's efforts to procure an expert to evaluate IR's forensic interview who could potentially testify at the hearing.

[¶25]  Similar deficiencies attend Jones' argument that counsel should have explored the notion that AR tainted IR's version of what Jones did to her at the competency hearing and trial.  Jones recognizes that counsel telephoned AR to try to interview her, and that AR never returned the call.  He suggests that this was not enough and that counsel should have kept calling.  He asks us to speculate that what was likely to be unappreciated persistence might have dissolved the unwillingness of a mother to cooperate with the defender of a man she believed assaulted her young daughter.  Jones suggests no source other than AR from whom counsel might have derived evidence that she tainted IR's recollection.  The law required counsel to perform as a reasonably competent attorney, not to accomplish something likely to be impossible in these circumstances.

[¶26]  We also find no merit in Jones' assertion that counsel did not adequately cross-examine IR or otherwise attempt to challenge the credibility of her accusation against Jones at trial.  The district court reached the same conclusion after observing the examination of counsel and the testimony of Jones' expert at the Rule 21 hearing.[12]  It

---

[11] Jones does not challenge the district court's determination that the child was competent.

[12] The expert was the district supervisor for the Casper office of the Wyoming State Public Defender.  He testified generally that in a variety of respects counsel's performance did not comport with that of a reasonably competent attorney, but the district court did not directly address that testimony in its opinion letter denying the Rule 21 motion.  It focused instead on the testimony of Jones' trial counsel.  We note in

noted that Jones' position at the hearing was largely that while counsel cross-examined the child, he should have done more. However, the expert did not point to any particular shortcoming that likely would have changed the outcome of the trial, and ignored counsel's strategic decision to avoid the risks that further examination might entail.

[¶27] For instance, in speaking of counsel's failure to seek a taint hearing separate from the competency hearing and to ask questions at the competency hearing, Jones' expert testified that he would have done things differently, but stopped short of saying that a reasonably competent attorney would have had to have done as the expert imagines he would have. Although he claimed defense counsel improperly limited his cross-examination of IR at trial, the expert suggested no additional questions that needed to be asked. In generally criticizing the allegedly limited investigative efforts of counsel, he did not indicate what beneficial information might have been gained by expanding the investigation. Jones' expert opined that counsel should have put on a stronger case that he never touched IR inappropriately, but apparently ignored the fact that Jones—the only certain source for such a defense—elected not to testify. In his own words, he was simply second-guessing Jones' trial counsel and playing Monday-morning quarterback.

[¶28] In contrast, the record indicates that counsel attacked the testimony of IR and AR through the testimony of Jones' wife and children. They indicated that Jones' daughter, not AR, had gone to IR's room to announce that dessert was ready, that Jones' son was in a position to see what was happening on IR's bed, and that IR had confused the chronology of rather minor events that took place that evening.

[¶29] Counsel focused much of his defense on innuendo by Jones' wife that AR had been smoking marijuana just before the group arrived at her apartment, as well as the claim of Jones' daughter that AR had spent most of the evening too busy in playing games on a Kindle Fire to interact with her guests. Although at the Rule 21 hearing Jones and his expert witness indicated that they could not discern any purpose to that aspect of the defense, we think the purpose was evident. Counsel wanted to paint AR's attention and perception as impaired to the point that she misconstrued what she saw in IR's room, that she conveyed that misunderstanding and her subsequent speculation to her daughter, and that she then pressed the child to adopt them.

[¶30] Counsel's plan in that regard was instrumental in his decision to limit his cross-examination of IR in response to some fortuitous statements she made during the State's direct examination. The child explained that after their guests left, her mother took her aside and asked what she and Jones had been doing when she walked in on them. She

---

that regard that a finder of fact may properly disregard expert opinion testimony that is less than credible, equivocal, unreasonable in light of other evidence, or insufficiently tied to the facts to which the opinion is purportedly directed. *Birch v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2014 WY 31, ¶ 14, 319 P.3d 901, 907 (Wyo. 2014) (citing *Leavitt v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 21, 307 P.3d 835, 841 (Wyo. 2013)); *Rice v. State*, 500 P.2d 675, 676 (Wyo. 1972).

said she did not want to answer, but her mother insisted. Consequently, she informed her mother that Jones had grabbed her hand and made her touch his "pee-pee." At that point, the State posed several poorly worded questions to which IR responded in a fashion that suggested her version of the events was what AR told her to say.

[¶31] Counsel testified at the Rule 21 hearing that he altered his cross-examination plan on the fly so as to prevent IR from retracting those potentially valuable statements. They helped validate his theory that a misperception by AR became a child's accusation of criminal behavior.

[¶32] We agree with the district court that these were the actions of a reasonably competent attorney, and that they did not unfairly prejudice Jones' case. Counsel provided Jones with effective assistance.

**Sufficiency of the Evidence**

[¶33] Jones presents an extremely narrow challenge to the sufficiency of the State's evidence. He claims only that there was no evidence that the acts for which he was convicted were accompanied by the required intent to achieve sexual arousal, gratification, or abuse, as required by the definition of sexual contact (an element of the offense of second-degree sexual abuse of a minor) contained in Wyo. Stat. Ann. § 6-2-301(a)(vi).

[¶34] When reviewing a challenge to the sufficiency of evidence to support a conviction, we must decide whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented. *Butler v. State*, 2015 WY 119, ¶ 6, 358 P.3d 1259, 1262 (Wyo. 2015). In doing so, we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. We will not reweigh the evidence or re-examine witness credibility. *McEuen v. State*, 2017 WY 15, ¶ 10, 388 P.3d 779, 782 (Wyo. 2017); *Butler*, ¶ 6, 358 P.3d at 1262; *Montee v. State*, 2013 WY 74, ¶ 18, 303 P.3d 362, 365 (Wyo. 2013). Because direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone. *Montee*, ¶ 21, 303 P.3d at 366.

[¶35] IR testified that Jones placed her hand on his penis. This alone suggests nothing so much as a sexual intent. That inference is further enhanced by Jones' effort to mask his actions by placing a blanket over his midsection, and IR's statement that his reaction to the touching was to "just smile."[13] This evidence was sufficient to allow rational

---

[13] IR made this statement during the forensic interview. Both the video and transcript of that interview were admitted into evidence and made available to the jury during Deputy Rakoczy's trial testimony.

jurors to reasonably conclude beyond a reasonable doubt that Jones caused IR to touch him for sexual arousal or gratification.

## CONCLUSION

[¶36]  Jones' attorney provided effective representation, and the evidence was sufficient to support his conviction.  The conviction and sentence are therefore affirmed.