FOX, Justice.
[¶1] A jury convicted Douglas Clayton Jones of three counts of second-degree sexual abuse of a minor and three counts of third-degree sexual abuse of a minor. He appeals his convictions, challenging the admission of recorded victim interviews and the sufficiency of the evidence. We affirm.
ISSUES
1. Did the district court abuse its discretion in admitting the victims' prior consistent statements?
2. Was there sufficient evidence to support Mr. Jones' convictions for second-degree sexual abuse of a minor?
FACTS
[¶2] During a family camping trip, then nine-year-old A.B. told her mother, Amanda Phillips, that her grandfather, Mr. Jones, had touched her inappropriately. Ms. Phillips' husband called her sister, Tanya Casanova, to tell her what A.B. had said because Ms. *755 Casanova and her two daughters, eight-year-old E.C. and seven-year-old N.C., lived with Mr. Jones. Ms. Casanova testified that she spoke to her daughters, explaining the difference between a "good touch" and a "bad touch" and that no one should be touching their "private parts." When she asked if there was anything they needed to tell her, N.C. responded that she and "Papa" had a secret and that he had touched her "private parts." E.C. then told her that she and Papa had a secret too. Ms. Casanova testified that she did not ask them any more questions and separated them. After Mr. Jones and his wife left the house, Ms. Casanova called 911 to report the allegations.
[¶3] Consistent with "investigation protocol" when the alleged victims are children, law enforcement arranged for the Child Advocacy Project (CAP) to conduct separate interviews with the girls. During her interview, A.B. explained that Mr. Jones had "rub[bed] on her privates" and "put his whole finger in the hole [she] pee[d] out of" on the camping trip. He told her not to tell anyone. Initially, A.B. said Mr. Jones had never touched her like that before, but later in the interview remembered an incident where she had been sitting with Mr. Jones in his recliner with a blanket covering them. Mr. Jones had told her to look up at the ceiling and touched her "pee pee" underneath the blanket. She told the interviewer that her aunt had taken a picture of her and Mr. Jones while it was happening.
[¶4] E.C. told her interviewer that soon after she, her sister, and her mother moved in with Mr. Jones, "he started touching us in the no[-]no square." She said Mr. Jones usually touched her in his chair when there were other people in the room, but they could not see it because it happened underneath a blanket. She said Mr. Jones "rubbed" her with his hand under her pajamas and over her underwear. Mr. Jones told her, "[I]t's our secret." Similarly, N.C. told her interviewer that Mr. Jones "touched the private spot [she went] pee with" under her underwear with his fingers. She said it happened in "his favorite chair" underneath a blanket. He also told her to keep it a secret.
[¶5] The State charged Mr. Jones with three counts of second-degree sexual abuse of a minor and three counts of third-degree sexual abuse of a minor.[1] Mr. Jones requested a hearing to determine whether A.B., N.C., and E.C. were competent to testify and to explore whether "taint of outside suggestion" would influence their testimony because he had "some worry that the initial interview of E.C. and N.C. was leading on the part of Ms. Casanova." Defense counsel examined A.B., N.C., and E.C. about conversations they had with their mothers and among themselves related to the allegations against Mr. Jones. He questioned Ms. Casanova about what she said to N.C. and E.C. after learning of A.B.'s allegations and asked whether the girls had communicated with one another before their CAP interviews. She testified that N.C. and E.C. had "some contact" because they "live[d] together as a family," but that neither of them spoke to A.B. before their interviews. The court found all three girls competent to testify.[2]
[¶6] Before trial, Mr. Jones moved to exclude the recorded CAP interviews from evidence on grounds that they were hearsay and would amount to improper vouching for the girls' credibility. The State argued the prior statements were admissible under W.R.E. 801(d)(1)(B) because they would be offered to rebut Mr. Jones' charge of fabrication or improper influence. The court commented:
based upon what I heard in [pretrial] arguments in this case, in the competency hearing that was held with respect to all three of the alleged victims ..., reviewing what's been offered and presented thus far, I think the Defense is asserting fabrication, perhaps improper influence. I remember questions relative to potential taint that [were] raised in the competency hearings and challenges to motive[.]
*756 The court denied the motion without prejudice, telling defense counsel he could revisit the objection when the evidence was presented.
[¶7] At trial, Mr. Jones reserved his opening statement for his case-in-chief, and the State called A.B. as its first witness. She testified that Mr. Jones had touched her "private parts" that she "go[es] pee out of" during the camping trip and that he had been touching her under her pants in a photo of them sitting under a blanket in his chair. During cross-examination, defense counsel asked whether Mr. Jones had reprimanded her for scratching her "privates" on the camping trip before she alleged he had touched her inappropriately; whether she had ever been tempted to shift blame to another person; and whether she had "ever told something [she] later wished [she] could take back." He also asked her if she remembered when someone had first shown her the photograph of her sitting with Mr. Jones in his chair. She responded, "Yeah--ish" and said she believed it was after her CAP interview. Defense counsel asked whether she had previously said she "didn't remember Papa touching [her] there until [she] saw the photograph," which she denied.
[¶8] N.C. testified that Mr. Jones "did stuff that ... he was not supposed to do. That was in the law." She said that when she sat with him in his chair he did something he "was not supposed to do ... to kids, but it's like PB and J, but no jelly and the B is actually a P." She explained that "PB and J" meant "pee pee" and that Mr. Jones would "scratch" it and had told her to keep it a secret. When the prosecutor asked her to identify Mr. Jones she said, "I'm not allowed to look at him to help me focus." Defense counsel cross-examined N.C., asking who had told her not to look at Mr. Jones and whether they had helped her prepare to testify. He asked whether she had talked to her mother, the prosecutor, and the CAP interviewers about what Mr. Jones had done. He also asked her what her mother had said to her before she told her about Mr. Jones touching her.
[¶9] E.C. testified that Mr. Jones touched her "private part" underneath a blanket in his chair. He "always" told her not to tell her parents and that it was their "secret." During cross-examination, defense counsel asked who she had talked to about the case, what her mother said to her and N.C. before they told her about Mr. Jones touching them, and whether she did things to try to please her mother.
[¶10] The girls' mothers also testified. During Ms. Phillips' cross-examination, defense counsel questioned her about her own history of sexual abuse and how it influenced raising her children. She talked to her children about "good touching" and "bad touching" "at least once a year" and had encouraged them to tell her about any inappropriate touching "since they were, like, in kindergarten." He also asked whether her sister, Ms. Casanova, "wanted attention," to which she responded, "She can be a bit ... on the dramatic side." During Ms. Casanova's cross-examination, defense counsel asked when and to whom she had shown the photograph of A.B. sitting on Mr. Jones' lap. She initially responded that she had shown the photograph to her sister and law enforcement after the CAP interview, but then said she was "mistaken on the dates" and must have shown it to them before the interviews, ultimately testifying she was "not exactly sure when [she] shared" the photograph but believed it was before the interviews. He also questioned her about what she had told her children about testifying.
[¶11] Following the testimony of the three girls and their mothers, the State moved to admit the redacted recordings of the CAP interviews over Mr. Jones' continuing objection. The court reviewed the three recordings before overruling Mr. Jones' objection, saying
I'm going to still conclude that Rule 801(d)(1)(B) of the Wyoming Rules of Evidence applies, and it provides that some prior consistent statements are not hearsay.... I think that we do have, first, that all three declarants have testified at trial, all three have been subject to cross-examination concerning prior statements.
... And then we have these excerpts, which are, as I see it, prior statements that are consistent with the testimony.
*757 I have to agree that there's some additional detail, some additional matters; but under the Lancaster versus State case, it has been held that prior consistent statement does not have to be identical to the declarant's trial testimony to be admissible under Rule 801(d)(1)(B). So we may have some variation, but the gist of the prior consistent statements is that they address the incidents of alleged sexual abuse that are alleged in the six counts in this case.
So I note that we get, then, to the fourth requirement, which allows the prior consistent statements be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.... [T]he thrust of the Defense's presentation thus far, both in the pretrial matters involving challenges to the 404(b) evidence, challenges to the competency of the victim witnesses, and in the cross-examination of all three victims and challenges to and inquiries concerning their observations, reports relative to the crimes charged in this case, and the details and reporting of those matters has all been inquired into. So I believe that these [exhibits] meet the requirements [of 801(d)(1)(B) ].
The court played the redacted recordings for the jury.
[¶12] After the State rested and Mr. Jones presented his case-in-chief, the jury returned guilty verdicts on all six counts. The district court sentenced Mr. Jones to 5 to 15 years on the three counts of second-degree sexual abuse of a minor, each sentence to run consecutively. The court found that the sentences for the three counts of third-degree sexual abuse of a minor merged with the first three counts. Mr. Jones timely appealed his judgment and sentence.
DISCUSSION
I. The district court did not abuse its discretion in admitting the victims' prior consistent statements
[¶13] Mr. Jones argues the district court erred in admitting portions of the victims' CAP interviews because it did not identify the consistencies between the prior statements and the witnesses' trial testimony on the record, it did not weigh the statements' probative value against their potential for unfair prejudice, and there was no suggestion of recent fabrication. The State counters that the district court "reviewed and properly admitted the videos" because "the declarants were subject to cross-examination ..., the prior statements were consistent with the declarants' trial testimony, and the prior statements were offered to rebut an express or implied charge against the declarant[s] of recent fabrication or improper influence or motive."
[¶14] We review rulings on the admissibility of evidence for an abuse of discretion. Marquess v. State , 2011 WY 95, ¶ 12, 256 P.3d 506, 510 (Wyo. 2011) (citing Hutchinson v. Taft , 2010 WY 5, ¶ 27, 222 P.3d 1250, 1257 (Wyo. 2010) ). In determining whether there has been an abuse of discretion, the issue is whether the district court could reasonably conclude as it did. Marquess , 2011 WY 95, ¶ 12, 256 P.3d at 510.
[¶15] " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). Generally, W.R.E. 802 prohibits admission of hearsay. However, W.R.E. 801(d) excludes certain out-of-court statements from the hearsay definition. W.R.E. 801(d)(1)(B) provides:
(d) Statements which are not hearsay. - A statement is not hearsay if:
(1) Prior Statement by Witness. - The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive....
We have enumerated the four requirements for admission of a prior consistent statement under the rule:
(1) that the declarant testify at trial; (2) that the declarant be subject to cross-examination concerning the prior statement; (3) that the prior statement be consistent *758 with the declarant's trial testimony; and (4) that the prior statement be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.
Griggs v. State , 2016 WY 16, ¶ 98, 367 P.3d 1108, 1136 (Wyo. 2016) (quoting Lancaster v. State , 2002 WY 45, ¶ 17, 43 P.3d 80, 88 (Wyo. 2002) ). Here, the girls testified at trial and were subject to cross-examination. Mr. Jones conceded at oral argument that the prior statements were consistent.[3] Thus, the issues here relate to the fourth requirement, which raises two temporal concerns.
[¶16] First is the question of when the alleged fabrication, improper influence, or motive arose. The United States Supreme Court has held that prior consistent statements are not admissible under Federal Rule of Evidence 801(d)(1)(B) to rebut an express or implied charge of recent fabrication or improper influence when made after the alleged improper motive arose. Tome v. United States , 513 U.S. 150, 156, 115 S.Ct. 696, 700, 130 L.Ed.2d 574 (1995). Although similarly worded, we have consistently held that W.R.E. 801(d)(1)(B) does not require that prior consistent statements be made before the alleged improper motive arose. Makinen v. State , 737 P.2d 345, 349 (Wyo. 1987) ; Dike v. State , 990 P.2d 1012, 1024 (Wyo. 1999) ; Beartusk v. State , 6 P.3d 138, 145 (Wyo. 2000) ; Lancaster , 2002 WY 45, ¶ 16, 43 P.3d at 88 ; Marquess , 2011 WY 95, ¶ 13, 256 P.3d at 511. Our justification for departure from interpretation of the federal rule is twofold. First, there is no express condition in the rule that the alleged improper motive must arise after the prior consistent statement. Makinen , 737 P.2d at 349. Second, "there is an inherent difficulty in determining when an improper motive may have arisen[.]" Id.
[¶17] However, we recognize that "[i]f the corrupting influence did in fact precede the [prior consistent] statements, probative value is greatly diminished." Griggs , 2016 WY 16, ¶ 109, 367 P.3d at 1139 (quoting Seward v. State , 2003 WY 116, ¶ 15, 76 P.3d 805, 811 (Wyo. 2003) ). For that reason, a prior consistent statement made after the alleged corrupting influence "may be used only for rehabilitation ... and not as affirmative evidence." Montoya v. State , 822 P.2d 363, 367 (Wyo. 1991). In those circumstances, "a limiting instruction must be given, if requested[.]" Id. Further, prior consistent statements offered for rehabilitative purposes are "susceptible to abuse" in that they may be used "as a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements." Tombroek v. State , 2009 WY 126, ¶ 14, 217 P.3d 806, 812 (Wyo. 2009) ; Griggs , 2016 WY 16, ¶¶ 109-11, 367 P.3d at 1138-39 ; Seward , 2003 WY 116, ¶ 16, 76 P.3d at 811-12 ; Wilde v. State , 2003 WY 93, ¶ 14, 74 P.3d 699, 707-08 (Wyo. 2003). Consequently, we have found reversible error where prior consistent statements were used "simply to enable the parties to bolster testimony by their witnesses by piling on their prior statements." Id. (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 405 (2nd ed. 1994 and Supp. 2002)).
[¶18] Mr. Jones argues that any implied charge of recent fabrication or improper influence arose before the girls made the prior consistent statements, and thus, their probative value was significantly diminished. He asserts the district court erred in failing to engage in line-by-line analysis of the prior statements' admissibility and in failing to explicitly weigh the prejudicial versus probative value of the statements under W.R.E. 403.
[¶19] This case illustrates the "inherent difficulty in determining when an improper motive may have arisen[.]" Makinen , 737 P.2d at 349. Defense counsel's cross-examination implied various grounds of improper motive or influence, and it is difficult to pinpoint *759 exactly when some of these implied influences might have arisen. The implied charge that Ms. Casanova improperly influenced her daughters when she spoke to them after hearing about the allegations related to A.B. clearly would have occurred before statements made during the CAP interviews. However, other alleged improper influences would have occurred after the CAP interviews, such as the implication that Ms. Casanova influenced their testimony by helping them prepare to testify at trial. The timing of other alleged improper influences, such as A.B. seeing the photograph of her and Mr. Jones in his chair, is unclear. Given this difficulty, we continue to find it appropriate to afford district courts discretion to admit prior consistent statements that may have occurred after an alleged motive to fabricate arose. Of course, in exercising that discretion, district courts must remain cognizant of their diminished probative value and their potential for abuse.
[¶20] Although it would have been helpful to have identified the timing of the alleged charge of fabrication or improper influence, we do not agree with Mr. Jones that admission of such statements requires express line-by-line analysis of the statements on the record or explicit W.R.E. 403 balancing in all circumstances. Mr. Jones cites Lancaster v. State in support of his argument. In Lancaster , the district court allowed the State to introduce a videotape of a witness's "actions and statements during a re-enactment of the crimes" as prior consistent statements under W.R.E. 801(d)(1)(B). 2002 WY 45, ¶¶ 8, 13-19, 43 P.3d at 86-89. In concluding that it was error for the trial court to admit the videotape, we criticized its failure to "break down the narrative and determine the separate admissibility of each 'single declaration or remark' " or to "engage in any analysis under W.R.E. 403." Id. at ¶¶ 25-26, 43 P.3d at 92. But, our concern about the lack of these procedures in Lancaster arose from the fact that any potential prior consistent statements occurred within "a re-enactment of the crimes, done to show how the crimes were committed." Id. at ¶ 25, 43 P.3d at 92. As a whole, the videotape did "not meet the definition of 'statement,' " yet the district court admitted it "almost in its entirety." Id. at ¶¶ 19, 25, 43 P.3d at 90, 92. In Lancaster , the court did not consider the probative value or potential for unfair prejudice of a videotape containing segments clearly outside the scope of 801(d)(1)(B). Id. at ¶¶ 25-27, 43 P.3d at 92-93. We described what a "careful" exercise of discretion might look like when admitting this type of evidence, citing a trial court's careful review of a videotape transcript and its redaction of irrelevant material. Id. at ¶ 27, 43 P.3d at 92-93. We found that "[n]othing resembling this process took place in the instant case." Id. at ¶ 27, 43 P.3d at 93.
[¶21] Contrary to Mr. Jones' argument, Lancaster does not impose a rigid process on courts considering admissibility of prior consistent statements. Rather, it simply describes one way in which a court might evidence a "careful exercise of discretion." So long as the record shows a careful exercise of discretion and satisfaction of the 801(d)(1)(B) elements, the court need not specifically identify on the record the consistencies between the prior statements and the in-court testimony or make a specific finding under W.R.E. 403 that the statements' probative value outweighs their potential for unfair prejudice. Here, the district court admitted thoroughly redacted recordings of statements after analyzing the four requirements of 801(d)(1)(B), including a specific finding that the statements were consistent with the girls' testimony. Even though the district court did not make a specific finding that the statements' probative value outweighed their potential for unfair prejudice, careful consideration of the statements' relevancy is implicit in the court's analysis.
[¶22] This case is also distinguishable from Wilde , where "the victim testified first at trial. Thereafter, the victim's mother, a law enforcement officer, the victim's pediatrician, an emergency room nurse, and a forensic examiner were called as witnesses and they repeated all, or parts of, the victim's allegations." Griggs , 2016 WY 16, ¶ 108, 367 P.3d at 1138. We held the district court abused its discretion by admitting the statements, "given the repetitive nature of the evidence so admitted and its highly prejudicial character" because they were used "simply to enable the parties to bolster testimony by their witnesses *760 by piling on their prior statements." Wilde , 2003 WY 93, ¶ 14, 74 P.3d at 707-08 (quoting 4 Mueller & Kirkpatrick, Federal Evidence § 405). Similarly, in Seward , the district court permitted a forensic interviewer to testify about the victim's statements during a forensic interview whose "express purpose ... was [to assess] whether the victim's disclosure of events was credible." Tombroek , 2009 WY 126, ¶ 14 n.2, 217 P.3d at 812 n.2 (citing Seward , 2003 WY 116, ¶ 17, 76 P.3d at 812 ). On remand, we directed the district court to consider
whether having numerous authority figures trained to recognize sexual abuse appear at trial is actually a trial strategy of preparing a multitude of self-serving, biased, inflammatory, video, audio, and written statements for trial; having the witness testify; and then introducing into evidence these consistent statements made prior to testifying. Such a trial strategy could render the statements irrelevant and unfairly prejudicial, particularly if the consequence of repeating the same testimony several times unduly emphasizes that testimony over all other testimony in the case.
Seward , 2003 WY 116, ¶ 16, 76 P.3d at 811-12 (internal citation omitted). Unlike in Wilde and Seward , the record does not show that the State procured the interviews for the purpose of presenting them at trial to bolster the children's statements. Griggs , 2016 WY 16, ¶ 112, 367 P.3d at 1139. Here, A.B., N.C., and E.C. made statements to the CAP interviewers "shortly after the initial report in a manner that would be expected in the early stages of a typical investigation." Id. (citing Tombroek , 2009 WY 126, 217 P.3d 806 ). Further, the State did not examine the CAP interviewers as to the substance of their conversations with the girls or elicit testimony that they believed the girls.[4] Instead, they were used only to establish the CAP interviews' evidentiary foundations, thereby avoiding the problem of "authority figures" "piling on" and "unduly emphasizing" their testimony.[5]
[¶23] The second temporal question W.R.E. 801(d)(1)(B) raises relates to the sequence of events at trial. Specifically, when considering the fourth requirement of W.R.E. 801(d)(1)(B), courts should evaluate when in the proceedings the charge of fabrication or improper influence arose. In admitting the prior consistent statements, the district court appears to have relied in part on "pretrial matters" in evaluating the implied charge of fabrication or improper influence. Similarly, on appeal, the State argues the pretrial competency hearing, questions asked during voir dire about children's abilities to lie, and Mr. Jones' reserved opening statement helped establish a defense theory charging recent fabrication or improper influence. To the extent the State relied on arguments it anticipated Mr. Jones would make or matters implying a recent charge of fabrication or improper influence outside the presence of the jury, we do not agree that they constitute the recent fabrication or improper influence required under W.R.E. 801(d)(1)(B).
[¶24] The only purpose of prior consistent statements offered before the defense has attacked credibility in the presence of the jury is to preemptively bolster credibility. This is outside the scope of 801(d)(1)(B), whose "focus ... [is] rehabilitation of a witness whose credibility has been impeached in *761 the particular manner described in the rule." Lancaster , 2002 WY 45, ¶ 15, 43 P.3d at 87. "Hence the exception comes into play only after an impeaching attack, and even then the exception comes into play only after certain kinds of impeaching attack ." 4 Mueller & Kirkpatrick, Federal Evidence § 8:38, Westlaw (database updated July 2018) (emphasis in original). Part of the reason we require an impeaching attack to be made before introduction of prior consistent statements is because it allows the district court to evaluate whether it is the sort of attack within the purview of W.R.E. 801(d)(1)(B). Trial courts must be cautious lest they allow admission of prior consistent statements any time a victim's credibility is questioned. A defense to crimes such as those at issue here will necessarily entail a defense theory that what the victim said happened did not happen. That alone does not open the door for admission of prior consistent statements. Marquess , 2011 WY 95, ¶ 15, 256 P.3d at 511 (holding an attack on a witness's recollection of events was outside the scope of 801(d)(1)(B) because it was a "general attack on a witness's credibility, without a claim of motive, influence or recent fabrication"). Further, admitting prior consistent statements before an attack would allow
the party who would defend the credibility of a witness ... to "push" the other side into an impeaching attack by getting the consistent statements in first. It should be up to the other side to decide whether to mount an attack[;] allowing rehabilitation before an attack ... puts the cart before the horse.
4 Mueller & Kirkpatrick, Federal Evidence § 8:38. Thus, generally, prior consistent statements offered in anticipation of an attack described in the rule should not be admitted.
[¶25] Some of our cases suggest otherwise. For example, in Alicea v. State , 13 P.3d 693 (Wyo. 2000), we said:
It is abundantly clear that although counsel for the defense studiously avoided cross-examining most witnesses and deferred his opening statement until after the State had presented its case, the principal defenses to be offered ... were an express charge of recent fabrication or improper influence or motive.... Throughout the pretrial proceedings Alicea injected his concerns that the children were not competent to testify because of improper influence.... Of course, at trial the full range of the sort of testimony contemplated by W.R.E. 801(d)(1)(B) was introduced.... Thus, the trial court did not err in admitting the testimony before any of the defense witnesses testified about fabrication or improper motive.
Id. at 698-99 (citing Humphrey v. State , 962 P.2d 866, 871-72 (Wyo. 1998) ); see also Marquess , 2011 WY 95, ¶ 13, 256 P.3d at 511 ("it is not necessarily error that the prior consistent statement was received in evidence before the allegation of fabrication or improper motive") (quoting Lancaster , 2002 WY 45, ¶ 18, 43 P.3d at 89 (citing Humphrey , 962 P.2d at 872 )). These cases derive the suggestion that anticipatory introduction of prior consistent statements is not error from Humphrey v. State . There, "the State explained that it intended to call the victim as its first witness, and the remaining testimony regarding the victim's statements would be elicited to rebut the expected inference on cross-examination of recent fabrication." 962 P.2d at 872. However, deviating from its "representation [ ] at the pretrial hearing, the State, without objection" called another witness to testify about the victim's prior consistent statements before calling the victim. Id. Thus, her "testimony was technically not for the purpose of rebuttal." Id. We noted first that defense counsel had "clearly articulated its theory [of recent fabrication] during opening statement." Id. In contrast, Mr. Jones reserved his opening statement and, as a result, did not make any express or implied charge of recent fabrication to the jury before the girls testified. Further, in Humphrey , we examined the record and said that "any error in the timing of [the first witness's] testimony is de minimis ." Id. We concluded "that there [was] no reasonable probability that, but for the admission of this testimony, the verdict would have been more favorable to Humphrey." Id. Thus, "[a]dmitting prior statements before an attack has been made may prove to be harmless error in light of later events and the overall record[.]"
*762 4 Mueller & Kirkpatrick, Federal Evidence § 8:38. But it is indeed error and may not be harmless in all cases. Humphrey reflects this rule, and to the extent that Alicea , Marquess , and Lancaster hold otherwise, they are overruled.
[¶26] Here, however, we find defense counsel's cross-examination of the girls satisfied the fourth requirement of 801(d)(1)(B). Counsel cross-examined the girls before admission of the prior consistent statements. Questions related to conversations they had with others about what Mr. Jones had done, the photograph shown to A.B., and whether anyone had helped them prepare to testify impliedly charged "recent fabrication or improper influence or motive." Thus, the district court did not abuse its discretion in admitting the prior consistent statements for rehabilitative purposes.
II. There was sufficient evidence to support Mr. Jones' convictions for second-degree sexual abuse of a minor
[¶27] Mr. Jones argues there was insufficient evidence to convict him of second-degree sexual abuse of a minor because there was no evidence of sexual gratification or, as to A.B., that he touched her "intimate parts." The State responds that there was sufficient circumstantial evidence of sexual gratification to support his convictions and that his argument concerning whether he touched A.B.'s "intimate parts" misstates the record.
[¶28] In reviewing a sufficiency of the evidence challenge, we
decide whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented. In doing so, we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. We will not reweigh the evidence or re-examine witness credibility. Because direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone.
Jones v. State , 2017 WY 44, ¶ 34, 393 P.3d 1257, 1264-65 (Wyo. 2017) (internal citations omitted).
[¶29] Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2017) provides:
(a) Except under circumstance constituting sexual abuse of a minor in the first degree ... an actor commits the crime of sexual abuse of a minor in the second degree if:
...
(ii) Being sixteen (16) years of age or older, the actor engages in sexual contact of a victim who is less than thirteen (13) years of age.
"Sexual contact" requires "touching, with the intention of sexual arousal, gratification or abuse , of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]" Wyo. Stat. Ann. § 6-2-301(a)(vi) (emphasis added). " 'Intimate parts' means the external genitalia, perineum, anus or pubes of any person or the breast of a female person[.]" Wyo. Stat. Ann. § 6-2-301(a)(ii).
[¶30] Under Wyo. Stat. Ann. § 6-2-315(a), "it is not enough to establish that the defendant merely touched the sexual or intimate parts of an individual. The law at issue requires the presence of intent of sexual arousal, gratification, or abuse." Trumbull v. State , 2009 WY 103, ¶ 13, 214 P.3d 978, 981 (Wyo. 2009). However, "[b]ecause direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone." Jones , 2017 WY 44, ¶ 34, 393 P.3d at 1265 (citing Montee v. State , 2013 WY 74, ¶ 21, 303 P.3d 362, 366 (Wyo. 2013) ). In Jones , we found the defendant's "effort to mask his actions by placing a blanket" over himself contributed to an inference of sexual gratification. Id. at ¶ 35, 393 P.3d at 1265. In Trumbull , we said, "[i]ntent of sexual gratification may be inferred from touching the complainant on more than one occasion" and concluded the district court "would have been justified in finding 'gratification' based upon the two virtually identical touchings." 2009 WY 103, ¶ 13, 214 P.3d at 981 (citing 2 Paul DerOhannesian II, Sexual Assault *763 Trials § 16.19). Similarly, we conclude Mr. Jones' effort to mask his actions by placing a blanket over himself and the girls, his repeated touchings of the girls in virtually identical ways, and his instructions to keep the touchings secret provided sufficient circumstantial evidence to permit a rational trier of fact to find intent of sexual gratification beyond a reasonable doubt.
[¶31] Concerning A.B., "sexual contact," as defined in Wyo. Stat. Ann. § 6-2-301(a)(vi), includes "touching ... the victim's intimate parts ... or of the clothing covering the immediate area of the victim's or actor's intimate parts [.]" (Emphasis added.) A.B. testified:
Q: What touching happened?
A: He was rubbing my tummy and he got down further and that's all I remember.
Q: Okay. How far - how much farther down did he go?
A: Started going into my pants a little bit.
Q: Under your pants?
A: Uh-huh.
Q: Did he touch your private?
A: No.
Q: When he went under your pants, did he go over the underwear or under?
A: Over.
Q: Okay. And did it go underneath some pants but over your underwear?
A: Yes.
...
Q: Okay. And how far - how close did he get to your private?
A: Just a little over the - my privates.
...
Q: Okay. And did it go inside or outside or something else?
A: Over my underwear.
A.B.'s testimony that Mr. Jones touched her "a little over her privates" provided sufficient evidence to permit a rational trier of fact to find that Mr. Jones had engaged in sexual contact with A.B.'s intimate parts beyond a reasonable doubt.
CONCLUSION
[¶32] The district court did not abuse its discretion in admitting the redacted CAP interview recordings as prior consistent statements, and there was sufficient evidence to support Mr. Jones' convictions. We affirm.

The charges related only to conduct that occurred in Natrona County; the State did not charge Mr. Jones for his alleged abuse of A.B. on the camping trip, which occurred in Converse County.

The court did not decide whether taint of outside suggestion would influence the girls' testimony.

Mr. Jones does criticize the district court for its failure to specifically identify the consistencies between the prior statements and the witnesses' trial testimony on the record. This criticism appears related to his argument that district courts should take great care in evaluating prior consistent statements made after a motive to fabricate or an improper influence arose, rather than an attack on whether the statements were in fact consistent. Accordingly, we consider this criticism in conjunction with requirement four.

In fact, when the State inquired into the substance of one of the interviews, Mr. Jones' counsel objected, and the court sustained the objection, saying "it would be cumulative."

Mr. Jones argues one of the CAP interviewers vouched for the girls' credibility "under the guise of providing foundation for the CAP interviews." He asserts that "Nationally, about 50 percent of all forensic interviews that are completed are unsubstantiated" and the "unmistakable implication is that this case is substantiated and has been professionally verified." We disagree. The CAP interviewers never offered an opinion on the truthfulness of the girls' statements. See Nielsen v. State , 2018 WY 132, ¶ 38, 430 P.3d 740, 752 (Wyo. 2018) (saying testimony that "assists the jury in understanding some other aspect of the case and does not involve comment on another witness's truthfulness [ ] is permissible"). Instead, they "merely explained departmental procedures designed to produce reliable information, which laid a proper foundation for the admission of the State's evidence." Contreras v. State , 7 P.3d 917, 920-21 (Wyo. 2000). Although the testimony may have had the collateral or incidental effect of supporting the other witnesses' statements, it does not amount to vouching. Saldana v. State , 846 P.2d 604, 618 (Wyo. 1993).