# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 4

OCTOBER TERM, A.D. 2016

January 19, 2017

BRANDON JOE OVERSON,

Appellant
(Defendant),

v.

S-16-0140

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

*Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel.  Argument by Ms. Olson.*

*Representing Appellee:*

*Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Mike Kahler, Senior Assistant Attorney General; Samuel S. Voyles, Assistant Attorney General. Argument by Mr. Voyles.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Brandon Overson, was convicted of two criminal charges, felony possession of methamphetamine and possession of methamphetamine with intent to deliver.  He appeals his conviction on the charge of possession with intent to deliver, claiming the district court erred when it admitted evidence of a prior drug transaction.  He does not challenge his conviction on the charge of possession of methamphetamine, but claims that, because felony possession is a lesser included offense of possession with intent to deliver, the district court erred in convicting and sentencing him on both counts.  We conclude that the challenged evidence was improperly admitted and prejudicial.  We will therefore reverse Mr. Overson's conviction for possession with intent to deliver, making it unnecessary to consider his second issue.

## ISSUES

[¶2]    Mr. Overson presents two issues:

> 1.  Did the district court erroneously admit irrelevant and prejudicial evidence of a prior drug transaction?
>
> 2.  Should Appellant's two convictions merge because the double jeopardy clauses of the Wyoming and United States Constitutions prohibit multiple convictions and sentences for the same conduct?

## FACTS

[¶3]    Mr. Overson's challenge to the relevance of the evidence in question requires us to examine in detail the evidence admitted at trial.  To understand the course of his trial, however, it is useful to take a step back and review the evidence submitted in the earlier hearing on Mr. Overson's motion to suppress evidence.  In his motion, Mr. Overson sought to suppress evidence resulting from a search of his person following a stop by police.  He claimed that the police stopped his vehicle without reasonable suspicion and then detained him for an unlawfully extended period.

[¶4]    At the motion hearing, police officer Jacob Foutch provided the foundation for the stop.  Officer Foutch testified that he, Officer Fitzner, and Sergeant Overton responded to a dispatch call advising of an anonymous report of a possible drug deal taking place behind a hotel.  They encountered two men and a woman.  The woman, later identified as Tandie Hooks, consented to a search of her vehicle.  The officers found a bag of methamphetamine in the driver's seat.  After placing Ms. Hooks under arrest, the officers found more methamphetamine inside her purse and hidden in her bra.

1

[¶5] After Ms. Hooks was taken into custody, she asked to speak to Officer Foutch again. According to Officer Foutch, she told him that her dealer, named Brandon, was currently at her home. She said the dealer drove a gold-colored Tahoe, and if that vehicle was still parked in her driveway, the dealer would also be at her house. She claimed that the dealer had arranged the drug deal behind the hotel, and she was only facilitating the transaction.

[¶6] At Ms. Hooks' residence, police officers confirmed that a gold Tahoe was parked in the driveway. Based on the license plate, the officers learned that the vehicle was registered to Brandon Overson. Other officers maintained surveillance while Officer Foutch went to his office to start the process of obtaining a search warrant. While still in that process, Officer Foutch was informed that the gold Tahoe was leaving the residence. He told the officers on the scene to stop the vehicle and detain the driver. Officers stopped the vehicle and identified the driver as Brandon Overson. Upon searching Mr. Overson, police discovered a large medication bottle hidden in his underwear. Inside the bottle were five separate packages of methamphetamine.

[¶7] When Mr. Overson called Ms. Hooks to testify at the suppression hearing, she denied telling Officer Foutch that her drug dealer was at her residence. She claimed she never mentioned the drug dealer's name to the officer. She denied giving Officer Foutch any information about the dealer's vehicle. She denied telling the officer that the dealer had set up the drug transaction behind the hotel. The district court denied the motion to suppress, explaining that it found Officer Foutch's version of events more credible than that presented by Ms. Hooks. The case proceeded to trial.

[¶8] At trial, the prosecution called Officer Fitzner as its first witness. He testified that he responded to a dispatch informing him that there was a possible drug deal taking place behind a hotel. When the prosecutor asked him to tell the jury what he found at the scene, defense counsel objected, claiming the evidence was irrelevant because there was nothing to connect Mr. Overson with this drug deal. The prosecutor responded that she was asking about "how they ended up getting to [Ms. Hooks' address]" and asserted that "[n]othing can be more relevant than how they ended up making contact with Mr. Overson." The objection was overruled. Officer Fitzner went on to testify in substantial detail about his investigation of the drug deal behind the hotel.

[¶9] Officer Fitzner testified that dispatch advised that the people involved in the transaction were driving a white Jeep and a silver passenger car. He found those two vehicles, and saw two men standing outside the vehicles and a woman sitting in the driver's seat of the silver car. One of the men ran away, and was chased by Sergeant Overton, who had just arrived at the scene. Officer Fitzner identified the woman as Tandie Hooks and the remaining man as Cody Johnson, and he began speaking to them. Noting that he was outnumbered two to one at that point, he began explaining the higher risk of getting hurt, particularly when money or narcotics are involved. Defense counsel

2

objected that this explanation was not relevant. The district court sustained the objection and struck that portion of Officer Fitzner's testimony.

[¶10] Asked what happened next, the officer said he noticed Mr. Johnson reaching into the pocket of his sweatshirt and fumbling with something inside. He asked Mr. Johnson if he had a weapon. Defense counsel objected on the basis of relevancy, asserting that whether or not Mr. Johnson had a gun did not indicate how police contacted Mr. Overson. The prosecutor responded that this information was "all part of the police investigation." The district court asked the prosecutor if there was going to be any evidence that Mr. Johnson was involved in dealing with Mr. Overson. The prosecutor admitted that there would be no evidence connecting Mr. Johnson with Mr. Overson, only evidence connecting Ms. Hooks with Mr. Overson. The objection was sustained, and the jury was instructed to disregard that information. Officer Fitzner continued, testifying that Ms. Hooks gave Sergeant Overton permission to look through her vehicle, and that the sergeant found a small baggie of what he suspected to be methamphetamine on the driver's seat. When Officer Foutch arrived on the scene, they separated Ms. Hooks from Mr. Johnson and spoke to them individually.

[¶11] Sergeant Overton testified next. He testified in some detail about chasing the man who had run away from the scene. He did not catch the man, but returned to the scene to assist Officer Fitzner. He observed that Officer Fitzner had moved the two suspects under an awning to get them out of the rain. Sergeant Overton then related that he had searched Ms. Hooks' vehicle and found suspected controlled substances. He said that he had photographed the controlled substances, and identified eighteen photographs he had taken.

[¶12] The prosecution moved to admit all eighteen photographs into evidence. Defense counsel objected, asserting that the photographs were not relevant. The prosecutor responded that the photographs depicted packaging that was identical to the packages found on Mr. Overson. The district court asked if the prosecution's offer of proof included information that Mr. Overson was Ms. Hooks' dealer, and the prosecutor responded, "That is the dot we'll be connecting." The district court went through the eighteen photographs individually, rejecting some it deemed irrelevant, and admitting twelve of the photographs. Sergeant Overton then described each of the admitted photographs in substantial detail.

[¶13] The sergeant also testified that he field tested some of the substances, and described the steps in conducting a field test for controlled substances. Defense counsel interrupted the explanation to object on grounds of relevance. The district court overruled the objection. Sergeant Overton completed his explanation of field testing but was never asked about the results of testing of the substances found in Ms. Hooks' vehicle. He testified that he also found baggies of substances in Ms. Hooks' bra, and that the packages together weighed over twenty-five grams. He said that field tests run on

3

these substances were positive for methamphetamine.

[¶14] The prosecution next called Officer Weinhardt. He testified that he was a K-9 handler with the Gillette police department. After another officer stopped Mr. Overson, Officer Weinhardt arrived as back-up, and patted down Mr. Overson for safety reasons. He felt a round, hard object in the waistband of Mr. Overson's pants. That object fell down further in Mr. Overson's pants, and the officer could no longer feel it. He did not search further, and Mr. Overson was handcuffed for safety reasons. Officer Weinhardt then took his dog to "conduct a free air sniff" around Mr. Overson's vehicle. The dog alerted at the door of Mr. Overson's vehicle. Inside the vehicle, the dog gave an indication at the cup holder between the two front seats. However, despite the dog's indications, no substances were found inside the vehicle.

[¶15] Officer Foutch testified next. He told the jury that he was near the hotel when dispatch relayed the information about the possible drug deal taking place, and he drove to the scene. He saw Officer Fitzner talking to two people under an awning. He approached and the officers separated the suspects, with Officer Fitzner initially talking to Ms. Hooks and Officer Foutch talking to Mr. Johnson, and later switching. He then went to drive by Ms. Hooks' residence, a trailer home, where he saw a gold Tahoe. The vehicle was registered to Mr. Overson. Finding no safe place to maintain surveillance on Ms. Hooks' residence, the officer called for two more officers to place themselves at the exits of the trailer park to watch for Mr. Overson's vehicle.

[¶16] Officer Foutch then went to the police department to begin the process for obtaining a search warrant. Another officer advised him that the gold Tahoe was leaving the trailer park, and had been stopped. When Mr. Overson was brought to the police station, Officer Foutch searched him more thoroughly and found a prescription medication bottle containing five individual baggies of a crystal substance. The officer identified the five baggies and stated that they weighed, respectively, 10.477 grams, 3.48 grams, 3.423 grams, 2.575 grams, and 2.48 grams. He also identified the medication bottle, and testified that two cell phones and $435 in cash were also found during the search.

[¶17] Detective Dowdy, the next witness for the prosecution, testified that in the controlled substance trade, cell phones are used to conduct business and maintain records. He stated that a "user amount" of methamphetamine is typically three grams or less, or commonly as little as one gram, and while prices varied, an average price would be $150 to $200 per gram of methamphetamine. He explained that three and a half grams is the equivalent of eight ounces, and that three and a half grams of methamphetamine is referred to as an "eight ball." The average price for an "eight ball" was between $350 and $500. He related that, in controlled substance investigations, possessing smaller quantities suggest that the individual is a user, while possessing larger amounts could indicate that a person is distributing or selling methamphetamine.

4

[¶18] After Detective Dowdy began describing his involvement in the search of Ms. Hooks' home, defense counsel objected. "Maybe [this] can be linked up with Ms. Hooks later," he asserted, "but at this point, I don't think the search of her house is relevant to this case." This prompted a discussion about whether the prosecution intended to call Ms. Hooks as a witness. The district court indicated that if Ms. Hooks was not called to produce evidence of a link with Mr. Overson, it would entertain a motion to strike all of the evidence regarding Ms. Hooks. The district court sustained the objection to evidence about the house search.

[¶19] Near the end of the first day of trial, the district court dismissed the jury, and summarized for counsel its evidentiary rulings so far. It noted that testimony about the transaction behind the hotel and photographs of the bagged substances found there had been conditionally admitted based on the State's theory of the case: "That they were going to show that Mr. Overson somehow had been in contact with Ms. Hooks." Concerning the State's suggestion that it might not call Ms. Hooks as a witness, the district court warned that if the link between that transaction and Mr. Overson was not made, it would "consider motions to strike at that point. I'm not sure that we can actually continue with the trial, and obviously, it would be up to defense counsel to make a motion for a mistrial."

[¶20] Amanda Heeren, a senior forensic analyst with the Wyoming State Crime Laboratory, was the first witness on the second day of trial. She testified to the weight of the substances in the bags found on Mr. Overson. She also confirmed that when she tested those substances she "identified the presence of methamphetamine."

[¶21] The prosecution called Ms. Hooks as its final witness. She confirmed that she was conducting a drug deal behind the hotel when the officers arrived. She denied that she was selling methamphetamine at Mr. Overson's request. She admitted telling the officers that "Brandon" was at her home. She testified that, when the officers asked her about Mr. Overson's vehicle, a gold Tahoe, she told them "that might be his." She admitted stating that, if the Tahoe was at her residence, Mr. Overson would be there, too. When asked if she told Officer Foutch that "Brandon" was her "dealer," she responded, "Possibly."

[¶22] Based on Ms. Hooks' testimony – particularly her indications that she "possibly" told Officer Foutch that "Brandon" was her "dealer," that he was at her residence, and that the gold Tahoe was his – the district court ruled that the prosecution had linked Mr. Overson sufficiently to the transaction behind the hotel "and established he was the one that supplied her drugs." It noted that "a reasonable jury at this point could infer that the drugs involved were from Mr. Overson."

[¶23] After the prosecution rested its case, Mr. Overson made a motion for a judgment

of acquittal arguing, in part, that while there may be evidence that Mr. Overson had delivered substances to Ms. Hooks, there was no evidence that they were methamphetamine. The prosecution responded that Sergeant Overton testified to field testing of the substances found on Ms. Hooks, and the presumptive result was that they were methamphetamine. The district court ruled that the prosecution had presented sufficient evidence that methamphetamine was found on Mr. Overson's person, and that the amounts and individual packaging was evidence of his intent to deliver. As to the substances involved in the transaction behind the hotel, the district court ruled that the presumptive field test was insufficient to prove that they were methamphetamine. For that reason, the district court ruled that "the State cannot argue that the drugs confiscated [behind the hotel] were delivered by Mr. Overson to, to establish . . . the charge of possession with intent to distribute. They can still argue that evidence for permissible purposes."[1]

[¶24] Based on this ruling, Mr. Overson proposed a jury instruction clarifying that the drugs for which he was being charged were those found on his person. The district court denied that request, but instead indicated that it would revise the verdict form so as to ask the jury to make a "finding that the drugs that were possessed were the ones on his person because I don't think that it's permissible for them to make a finding that he possessed [with] intent to distribute the drugs that were found on Ms. Hooks. There's just not sufficient evidence in front of me, so let me rerun the verdict form."[2]

[¶25] The jury found Mr. Overson guilty of possession of methamphetamine with intent to deliver in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2015), and guilty of felony possession of methamphetamine in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii). On the verdict form, the jury marked an "X" next to the "Yes," indicating

---

[1] Mr. Overson chose not to testify or present other evidence.

[2] With respect to the first count charged against Mr. Overson, the verdict form read as follows:

> We, the jury, duly empanelled to try the above-entitled case, FIND AS FOLLOWS:
>
> 1.       As to the crime of **Possession of a Controlled Substance with Intent to Deliver**, as charged in Count I, we find the Defendant, BRANDON OVERSON:
>      \_\_\_\_\_ Guilty
>      \_\_\_\_\_ Not Guilty
>
>      We unanimously find that the Defendant, Brandon Overson, possessed a controlled substance, methamphetamine, on his person.
>      \_\_\_\_\_ Yes
>      \_\_\_\_\_ No

the unanimous finding that he possessed the methamphetamine on his person. The district court sentenced Mr. Overson to serve three to eight years on the possession with intent to deliver charge, and three to five years imprisonment on the possession charge, with the sentences to run concurrently. Mr. Overson filed a timely appeal with this Court.

## DISCUSSION

[¶26] In his first issue, Mr. Overson claims that evidence about the drug transaction behind the hotel was irrelevant, and the district court's decision to admit it was error. We review a trial court's evidentiary decisions for abuse of discretion.

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion.
>
> *Brock v. State*, 2012 WY 13, ¶ 23, 272 P.3d 933, 939-40 (Wyo. 2012) (quoting *Edwards v. State*, 2007 WY 146, ¶ 7, 167 P.3d 636, 637 (Wyo. 2007)). "The ultimate issue that we decide in determining whether there has been an abuse of discretion is whether or not the court could have reasonably concluded as it did." *Edwards v. State*, 973 P.2d 41, 45 (Wyo. 1999) (quoting *State v. McDermott*, 962 P.2d 136, 138 (Wyo. 1998)).

*Lawrence v. State*, 2015 WY 97, ¶ 10, 354 P.3d 77, 80 (Wyo. 2015).[3] If we determine that evidence was admitted in error, then we consider whether the error was prejudicial. *Hill v. State*, 2016 WY 27, ¶ 22, 371 P.3d 553, 560 (Wyo. 2016).

[¶27] As discussed above, defense counsel first objected to evidence about the transaction behind the hotel when Officer Fitzner was asked what he saw when he arrived at the scene. His objection was that the evidence was irrelevant because it was not

---

[3] Although defense counsel did not object every time a witness testified about the transaction behind the hotel, he did so frequently enough to place the issue of relevancy squarely before the district court. It is therefore appropriate for us to review the district court's decision for abuse of discretion. The State does not contend that we should review for plain error.

7

connected to Mr. Overson. The prosecutor asserted that the evidence was relevant because "[n]othing can be more relevant than how they ended up making contact with Mr. Overson." The district court overruled the objection, explaining later that the evidence was admitted pursuant to W.R.E. 104(b)[4] on the condition that the prosecution must make the connection between Mr. Overson and the transaction behind the hotel.

[¶28] During the course of the trial, however, it became clear that the prosecution also intended to use this evidence to show that Mr. Overson had supplied the drugs to Ms. Hooks for her to sell. When the district court later decided that the prosecution had satisfied the condition of connecting Mr. Overson to the transaction, it indicated its approval of this use of the evidence. It concluded that "a reasonable jury at this point could infer that the drugs involved were from Mr. Overson," and that the prosecution had adequately "established he was the one that supplied [Ms. Hooks'] drugs."

[¶29] The district court subsequently withdrew its approval for that use of the evidence. At the close of the prosecution's case, Mr. Overson moved for a judgment of acquittal. Although the district court denied that motion, it agreed with Mr. Overson's assertion that the prosecution had failed to provide evidence that the substances found in Ms. Hooks' car and on her body were actually methamphetamine. Based on that failure of proof, the district court determined that the prosecution could not argue that Mr. Overson had supplied controlled substances to Ms. Hooks, and later revised the verdict form in an attempt to clarify that the controlled substances at issue in Mr. Overson's case were those found on his person. The district court ruled, however, that the prosecution could still use evidence of the transaction behind the hotel for other "permissible purposes."

[¶30] The only other permissible purpose ever suggested by the prosecution was to indicate the reason for stopping and detaining Mr. Overson. Accordingly, the question raised in this appeal is a focused one: Was the evidence admitted concerning the transaction behind the hotel relevant to show why Mr. Overson was stopped and detained? We conclude that, while a small portion of that evidence was relevant, the great bulk of it was not.

[¶31] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. In applying this rule to the case before us, we first note that the central question of consequence in determining Mr. Overson's guilt was whether he had intent to deliver. In his opening statement, counsel for Mr. Overson admitted that "[t]he evidence will be clear that Mr. Overson did

---

[4] W.R.E. 104(b) provides that, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

indeed possess methamphetamine on that day." However, he asserted the "evidence will not be so clear that Mr. Overson intended to deliver methamphetamine. That's the issue in the case."

[¶32] The question of why Mr. Overson was stopped and detained was of little consequence during his trial. We have recognized that "testimony about the course of an investigation leading to a defendant's arrest is not irrelevant evidence." *Hernandez v. State*, 2010 WY 33, ¶ 17, 227 P.3d 315, 321 (Wyo. 2010) (citing *Evenson v. State*, 2008 WY 24, ¶ 10, 177 P.3d 819, 823 (Wyo. 2008)). However, we have also recognized that there are limits to the use of such evidence. *Griggs v. State*, 2016 WY 16, 367 P.3d 1108 (Wyo. 2016).

[¶33] In *Griggs*, a foster mother testified about the foster children's reports of sexual abuse. *Id.*, ¶ 82, 367 P.3d at 1133. Responding to the appellant's claim that such testimony was inadmissible hearsay, the State asserted that the testimony was not hearsay because it was admitted not "for the truth of the matter asserted (i.e., that the abuse had actually occurred) but rather to show what [she] did in response to the reports." *Id.*, ¶ 83, 367 P.3d at 1133. We noted that a similar situation is presented when a law enforcement officer is asked to repeat a report of the defendant's criminal behavior. We said that such reports

> may fall within the rule allowing out of court statements to show their effect on the hearer rather than for the truth of the matter asserted. The issue often arises during the testimony of an investigating law enforcement officer. For example,
>
> > [a]n out-of-court declaration by a third party to a police officer which is offered at trial merely to explain the officer's conduct in the investigation of a crime is usually admissible because it is not offered for the truth of the matter stated. The conduct to be explained should be relevant, in need of explanation, and contemporaneous with the statements.
>
> 29 Am. Jur. 2d *Evidence* § 676 (2015). *See also Schreibvogel v. State*, 2010 WY 45, ¶ 28, 228 P.3d 874, 884 (Wyo. 2010); *Kerns v. State*, 920 P.2d 632, 640-41 (Wyo. 1996); *Olson v. State*, 698 P.2d 107, 113-14 (Wyo. 1985) (an officer's testimony reciting a victim's or witness's statement elicited to provide context for the investigation may be admissible if it is not offered to prove the truth of the matter asserted).

*Griggs*, ¶ 85, 367 P.3d at 1133. However, relying on the reasoning of a case from the

Tenth Circuit Court of Appeals and our own precedent, we warned that

> the use of out of court statements to show the effect on the hearer is limited. It may be necessary and appropriate to introduce some out of court statements or portions of statements to explain the course of events, but other portions of the same statements may go far beyond what is necessary for this limited purpose. The rationale may not be used to inform the jury of the details of a victim's allegation of the criminal conduct or a witness's statement when those details are not necessary to explain what happened next.

*Griggs*, ¶ 86, 367 P.3d at 1134 (citing *United States v. Cass*, 127 F.3d 1218, 1223 (10th Cir. 1997); *Kerns v. State*, 920 P.2d 632, 640-41 (Wyo. 1996); and *Longstreth v. State*, 832 P.2d 560, 563 (Wyo. 1992)).

[¶34]   Another statement of this principle is set forth in 2 *McCormick on Evidence* § 249, at 193-95 (7th ed. 2013) (footnotes omitted):

> The officers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct. They should not, however, be allowed to relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay. Such statements are sometimes erroneously admitted under the argument that the officers are entitled to give the information upon which they acted. The need for this evidence is slight, and the likelihood of misuse great. Instead, a statement that an officer acted "upon information received," or words to that effect, should be sufficient.

Hearsay is not at issue in Mr. Overson's case. However, the same principle applies to any evidence offered to indicate why an officer acted as he did. The need for such evidence is slight, and its use should be limited to explaining what happened next.

[¶35] The evidence presented in Mr. Overson's case far surpassed that limit. Even though the district court sustained some of Mr. Overson's objections to the relevancy of evidence about the transaction behind the hotel, the evidence admitted was far more than what would have been necessary to explain what happened next. For example, Officer Fitzner's detailed description about what he saw when he arrived at the scene of the transaction behind the hotel had little relevance to the question of why Mr. Overson was stopped. The facts that one of the suspects ran away, that the officer felt at risk because

10

he was outnumbered, and that the officers separated Ms. Hooks from Mr. Johnson and interviewed them individually, all lacked any connection to Mr. Overson, and did little to explain what happened next. Much of his testimony was wholly irrelevant to the question of why Mr. Overson was stopped.

[¶36] Also irrelevant was Sergeant Overton's testimony about chasing the fleeing suspect. The potential relevance of the twelve photographs of packaged substances found in Ms. Hooks' car disappeared when the prosecution failed to prove that the substances were methamphetamine. Further, when arguing that photographs of the drugs found on Ms. Hooks and in her vehicle were relevant, the prosecutor pointed out that the photographs showed packaging "identical to that found on Mr. Overson." That information became irrelevant when the district court ruled that the prosecution could not argue that Mr. Overson had supplied drugs to Ms. Hooks. The sergeant's lengthy explanation of field testing for controlled substances was rendered irrelevant when the district court ruled that the field testing was insufficient to prove that the substances found in Ms. Hooks' car were methamphetamine.

[¶37] Officer Foutch's testimony about the investigation that resulted in Mr. Overson being stopped is a good illustration of the principle stated in *McCormick on Evidence* and quoted above. His testimony was admitted to show the information on which he acted. But because the basis for stopping Mr. Overson was not really in question, the need for such evidence was slight. When asked what he did after speaking with Ms. Hooks, Officer Foutch responded, "I went and drove by her place that she told me she lived," and found Mr. Overson's vehicle there. That statement would have been sufficient to show how they made contact with Mr. Overson. The details of his investigation did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. The evidence was not relevant.

[¶38] We therefore conclude that much of the evidence admitted at Mr. Overson's trial was irrelevant and admitted in error. The next step is to consider whether this error resulted in prejudice to Mr. Overson.

> W.R.A.P. 9.04 states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." W.R.Cr.P. 52(a) and W.R.E. 103(a) contain similar provisions. The test for harmless error stated in the reverse is as follows:
>
>> "'An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never

occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play." *Johnson v. State*, 790 P.2d 231, 232 (Wyo. 1990)."

> *Lancaster v. State*, 2002 WY 45, ¶ 28, 43 P.3d 80, 93 (Wyo. 2002) (quoting *Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, 767 (Wyo. 2001), *cert. denied*, 535 U.S. 994, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002)).

*Dysthe v. State*, 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo. 2003).

[¶39] The State attempts to minimize the impact of the erroneously admitted evidence. It points out that Mr. Overson possessed a relatively large amount of methamphetamine in five separate packages, some containing the specific amount commonly referred to as an "eight ball" in the drug community. He was also carrying two cell phones and $435 in cash. Based on this evidence, the State contends that any error in admitting the evidence was not prejudicial. We are not convinced.

[¶40] The challenged evidence went directly to the heart of Mr. Overson's defense. He admitted to possession of the drugs. The only issue in play was whether he possessed the drugs with intent to distribute. The volume of the improperly admitted evidence is substantial. Much more of the trial transcript is devoted to testimony about the events behind the hotel than to testimony directly related to Mr. Overson. Further, it is clear that the prosecution intended to use evidence of the transaction behind the hotel to prove that Mr. Overson had provided drugs to Ms. Hooks. The district court initially deemed the evidence relevant for that purpose, noting that "a reasonable jury at this point could infer that the drugs involved were from Mr. Overson." It is likely that the jury, having seen and heard the same evidence, made just that inference.

[¶41] Later, the district court changed its ruling, and prohibited the prosecution from using the evidence for that purpose. Yet no instruction was given telling the jury that evidence about the transaction behind the hotel was admitted for the limited purpose of establishing why the police stopped and detained Mr. Overson. It is impossible to believe that the jury would, without being instructed, consider the evidence only for that limited purpose. Without that evidence, there is a reasonable possibility that the verdict might have been more favorable to Mr. Overson. Admission of that evidence was prejudicial, and Mr. Overson's conviction for possession with intent to distribute should be reversed.

[¶42] Because Mr. Overson's first issue is dispositive, we do not need to consider his second issue. The case is reversed and remanded for further proceedings in accordance with this opinion.